**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NUMBER 19-CV-81625-DMM**

CHRISTOPHER VILLAR,                                          **HEARING REQUESTED**

      Plaintiff,

vs.

CAMMARATA MANAGEMENT, INC.,
a Delaware corporation,
KM ORGANIC FUND INC.,
a Florida profit corporation, and
MICHAEL CAMMARATA,

      Defendants.

---

**DEFENDANTS' CAMMARATA MANAGEMENT, INC., KM ORGANIC FUND INC.
AND MICHAEL CAMMARATA'S MOTION FOR SUMMARY JUDGMENT**

      Defendants Cammarata Management, Inc. ("CMI"), KM Organic Fund Inc.

("KMO"), and Michael Cammarata ("Cammarata") (collectively "Defendants"), by and through

its undersigned counsel and pursuant to Fed.R.Civ.P. 56, hereby moves for summary judgment.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Defendants Cammarata Management, Inc. ("CMI"), KM Organic Fund Inc. ("KMO"),

and Michael Cammarata ("Cammarata") (collectively "Defendants"), are entitled to summary

judgment because there is no material dispute that Plaintiff's FLSA claims have no merit for two

independent reasons: (1) Plaintiff Christopher Villar ("Plaintiff") was an independent contractor;

and (2) Plaintiff's claims are barred by the statute of limitations.  The economic reality of the

relationship between the parties shows that Plaintiff was not economically dependent on

Defendants and that any violation of the FLSA could not have been willful, barring his entire

claim.  Thus, Defendants respectfully move for summary judgment on all of Plaintiff's claims.

## II.   <u>RELEVANT PROCEDURAL HISTORY</u>

Plaintiff stopped working for KMO almost three years ago in October 2017.  Yet, he

waited over two years, until December 4, 2019, to file this independent contractor

misclassification action that is barred by the statute of limitations.  Plaintiff alleges for the first

time in the complaint that he was allegedly owed unpaid minimum wages and overtime as an

alleged employee, despite prior admissions that he was an independent contractor.  Plaintiff

additionally seeks liquidated damages and attorneys' fees.  Given the timing of Plaintiff filing

the complaint in this action on December 4, 2019, it appears that Plaintiff did so in bad faith for

the sole purpose to gain leverage and obtain discovery to which he is not entitled in a state court

action ("State Court Action") where Plaintiff's company Virtual Mountain Capital LLC

("VMC") alleges claims against, *inter alia*, Cammarata and KMO.  VMC filed the State Court

Action on October 16, 2018 in the 15th Judicial Circuit Court of Palm Beach County, Florida,

Case No. 502018CA013104.  (*See* Defendants' Separate Statement of Undisputed Material Facts

("SSUMF") ¶ 42).  On September 27, 2019, KMO and CMI had added Plaintiff as a counter

defendant by filing a Counterclaim against, *inter alia*, Plaintiff and VMC for breach of, among other things, Plaintiff's non-disclosure agreements that he had executed as an independent contractor for CMI and KMO.  (*See* SSUMF ¶ 42).  On October 22, 2019, Plaintiff filed a motion to dismiss ("VMC and Villar's Motion to Dismiss") the Counterclaim in the State Court Action based, in part, on an assertion that the Counterclaim should be brought in Federal court. (*See* SSUMF ¶ 42).  On December 4, less than two weeks prior to the hearing scheduled for December 17, 2019 on VMC and Villar's Motion to Dismiss, Plaintiff filed this action and mentioned the same to the state court at the hearing as potential leverage in support of the motion to dismiss. (*See* SSUMF ¶ 44). Specifically, Plaintiff's counsel argued at the hearing on VMC and Villar's Motion to Dismiss that CMI and KMO's counterclaims should be dismissed from the State Court Action because "Villar . . . already has filed suit against CMI and KMO, these two counterclaimants, in Federal court. So it's already pending in Federal court." (*See* SSUMF ¶ 44). The State Court Action court declined, however, to dismiss the Counterclaim based on the Federal action. (*See* SSUMF ¶ 44).

After the state court rejected Plaintiff's strategy to avoid joinder in the State Court Action on December 17, Plaintiff's counsel stopped actively pursuing this case.  Plaintiff failed to appear for his properly noticed deposition in this case and failed to notice or take a single deposition prior to the discovery cut-off.  Plaintiff only produced 11 documents, 48 pages, consisting of his 1099 tax forms issued by CMI and KMO, W2 tax forms for employers where he also worked and a resume.  On March 27, 2020, Magistrate Judge Reinhart compelled the deposition of Plaintiff to take place on Tuesday, March 31 and compelled Plaintiff to produce documents and supplement responses to Defendants' requests for production. (ECF No. 45.) Judge Reinhart also denied Villar's motions to compel in the FLSA case. (*Id*.) In response to

Judge Reinhart's order, Plaintiff only produced one document, a receipt for his purchase of a

laptop, and refused to answer certain questions at his deposition. (*See* Declaration of Jeffrey K.

Joyner In Support Of Defendants' Motion For Summary Judgment ("Joyner Decl.") ¶ 10). Thus,

Defendants were forced to set a hearing before Judge Reinhart for Plaintiff's violation of his

order compelling Plaintiff to produce documents and appear for his deposition. (ECF No. 47.)

## III.   STATEMENT OF MATERIAL FACTS

Defendant CMI is a management company having represented musicians, actors, and

businesses.  (*See* SSUMF ¶ 1; Defendants' Answer and Affirmative Defenses to Complaint (ECF

No. 16, ¶ 14)). Defendant KMO is a company that has held a membership interest in a natural

products company named Schmidt's Deodorant Company, LLC ("Schmidt's"). (*See* SSUMF ¶ 2;

Defendants' Answer and Affirmative Defenses to Complaint (ECF No. 16, ¶ 14)). Defendant

Michael Cammarata is a successful entrepreneur. (*See* SSUMF ¶ 1, Ex. A, Deposition Transcript

of Christopher Villar ("Villar Depo.") at 126:4-10).

Plaintiff first met Cammarata in 2010 through a mutual friend, after which the two began

spending time together and became "best friends." (*See* SSUMF ¶ 3; SSUMF Ex. A, Villar

Depo. at 99:20-100:2, 124:18-21).  In approximately November 2011, Plaintiff began working

for CMI as Cammarata's executive assistant as an independent contractor. (*See* SSUMF ¶ 4;

SSUMF Ex. B, Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 127:1-3;

182:12-22). Plaintiff believes Cammarata offered him a job to "help[] his friend out." (*See*

SSUMF ¶ 5; SSUMF Ex. A, Villar Depo., at 125:9-127:10).

Prior to working for CMI, Plaintiff attended film school and pursued a career as an actor

and film producer. (*See* SSUMF ¶ 6; SSUMF Ex. A, Villar Depo., at 57:8-19; Ex. B, Exhibit 5 to

Villar Depo., p. 4-5). Plaintiff's role was primarily to help people raise money and Plaintiff made

a number of professional connections through his entertainment work. (*See* SSUMF ¶ 7; SSUMF Ex. B, Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 58:4-16; 91:10-22). Plaintiff had his own film company called Verbum Films (*see* SSUMF ¶ 8; SSUMF Ex. A, Villar Depo., at 114:3-8) and Plaintiff worked on three projects as a producer: a project with David Raines and Gerald Molen which resulted in a lawsuit against David Raines in about 2004 (*see* SSUMF ¶ 8; SSUMF Ex. A, Villar Depo., at 115:21-117:24), Suburban Jungle in about 2009 to 2010 (*see* SSUMF ¶ 8; SSUMF Ex. A, Villar Depo., at 88:5-89:8), and the Indigo Project in about 2011 (s*ee* SSUMF ¶ 8; SSUMF Ex. A, Villar Depo., at 90:4-16).

Plaintiff co-owned and worked on the Indigo Project while he worked for CMI beginning in 2011, along with a number of entertainment related projects. (*See* SSUMF ¶ 10; SSUMF Ex. A, Villar Depo., at 90:4-24; 97:16-98:22; 99:8-16).The Indigo Project included publication of a book through the Independent Publishers Group that was and is available for sale in paperback and hard cover.  (*See* SSUMF ¶ 11; SSUMF Ex. A, Villar Depo., at 105:17-106:1).  Independent Publishers Group had a distribution deal with CMI wherein CMI and Plaintiff would receive a percentage of sales of the Indigo Project.  (*See* SSUMF ¶ 12; SSUMF Ex. A, Villar Depo., at 93:8-94:10).  Plaintiff received a check for about $50 to $100 in connection with sales of the book.  (*See* SSUMF ¶ 13; SSUMF Ex. A, Villar Depo., at 92:11-21; 107:6-20). Plaintiff believes he potentially invested over $2,000 in the Indigo Project for advertising and artwork for the book and has yet to recover his investment.  (*See* SSUMF ¶ 14; SSUMF Ex. A, Villar Depo., at 94:16-19; 95:3-8; 92:11-21).  Cammarata did not financially invest in the Indigo Project but ran publicity for the book in about 2015 or 2016 in connection with an update on his other projects. (*See* SSUMF ¶ 15; SSUMF Ex. A, Villar Depo., at 95:9-96:14).

Plaintiff's job duties with CMI included: liaising between Cammarata and clients regarding client accounts and new business; coordinating executive and senior management vacation, day-to-day meeting and travel schedules; scheduling and planning meetings and conferences; researching topics of interest and gathering information to produce reports; supervising executive and management calendars while allocating tasks to administrative support team; providing logistical support to visiting executives, coordinating with other executive assistants; and executing special objectives and projects in response to executive team and board member requests. (*See* SSUMF ¶ 16; SSUMF Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 148:12-149:16).

Plaintiff began working for KMO in approximately January 2015 and Cammarata's executive assistant and an independent contractor. (*See* SSUMF ¶ 17; SSUMF Ex. B, Exhibit 5 to Villar Depo., p. 3-4 (Villar_00044-45); Ex. A, Villar Depo., at 188:5-14). Plaintiff's job duties at KMO included: preparing and updating office records, spreadsheets and presentations to support executive needs; supervising executive and management calendars while allocating tasks to administrative support team; executing special objectives and projects in response to executive team and board member requests such as sending out holiday samples of Schmidt's deodorant to potential investors and distributors; providing logistical support to visiting executives, coordinating with other executive assistants; keeping executives up to date on changing business information by documenting meetings, tracking documentation such as investors interested in KMO, and collecting team data; and scheduling conferences and associated travel arrangements. (*See* SSUMF ¶ 18; SSUMF Ex. A, Villar Depo., at 220:20-221:11; Ex. B, Exhibit 5 to Villar Depo., p. 3-4 (Villar_00044-45); Ex. C, Exhibits 13-16 to Villar Depo.; Ex. D, Exhibit 21 to

Villar Depo). Plaintiff was paid $169 per week for work with KMO regardless of how many hours he worked. (*See* SSUMF ¶ 19; SSUMF Ex. A, Villar Depo., at 212:24-213:15; 218:6-19).

While he worked for KMO and CMI, Plaintiff primarily interacted with Cammarata to whom he reported, his parents, and possibly a bookkeeper. (*See* SSUMF ¶ 20; SSUMF Ex. A, Villar Depo., at 143:7-144:2). During the relevant time period, KMO did not have a payroll, accounting, legal, or human resources department. (*See* SSUMF ¶ 21; SSUMF Ex. E, Declaration of Scott Miegel In Support of Defendants' Motion for Summary Judgment ("Miegel Decl.") ¶ 2). From December 4, 2016 to October 2017 ("the Relevant Time Period"), Plaintiff performed all of his work for KMO remotely from his place of residence and did not work from KMO's office.[1] (*See* SSUMF ¶ 22; SSUMF Ex. A, Villar Depo., at 234:21-235:4; Ex. E, Miegel Decl. ¶ 3). Most of Plaintiff's work was done through e-mail. (*See* SSUMF ¶ 23; SSUMF Ex. A, Villar Depo., at 237:9-16). In July 2013, Plaintiff purchased a laptop using his own debit card for use in his work for CMI and KMO for which he was only partially reimbursed. (*See* SSUMF ¶ 24; SSUMF Ex. A, Villar Depo., at 234:21-235:4). Plaintiff's laptop was registered to Plaintiff, Plaintiff used his own server for work on the laptop, and Plaintiff worked in his own residence when he performed work for CMI and KMO. (*See* SSUMF ¶ 25; SSUMF Ex. A, Villar Depo., at 236:17-237:2). Plaintiff threw away his laptop containing CMI and KMO confidential information sometime in 2017 and did not notify CMI or KMO he had done so until Cammarata inquired about the laptop in October 2017 when Plaintiff quit because Plaintiff believed it to be his laptop. (*See* SSUMF ¶ 26; SSUMF Ex. A, Villar Depo., at 235:20-237:2; Ex. F, Exhibit 10 to Villar Depo., at p. 29).

---

[1] The Relevant Time Period is from December 4, 2016 to October 2017 because this action was filed on December 4, 2019, the statute of limitations for an FLSA action is three years, and Plaintiff stopped working for KMO in October 2017.

Plaintiff and Defendants did not record Plaintiff's hours during the entire working relationship and Plaintiff did not have fixed working hours set by Defendants. (*See* SSUMF ¶ 27; SSUMF (*See* Ex. A, Villar Depo., at 128:2-24; 178:7-179:4; Ex. E, Miegel Decl. ¶ 4). Plaintiff does not know the exact hours he worked, approximates that he worked 60 hours per week based on his estimate that he worked 10 hours per day because he would wake up very early and not be done working until pretty late at night and on weekends, and claims he was available "24/7" to Cammarata. (*See* SSUMF ¶ 28; SSUMF Ex. A, Villar Depo., at 127:16-22; 178:7-179:4; 182:8-11).  In August 2017, Plaintiff estimated in an email that he was spending only about 30 hours per week working for Schmidt's. (*See* SSUMF ¶ 29; SSUMF Ex. G, Exhibit 23 to Villar Depo.; Ex. A, Villar Depo., at 209: 11-13).

Cammarata's instructions to Plaintiff for work were very general and not highly specific. (*See* SSUMF ¶ 30; SSUMF Ex. H, Exhibit 14 to Villar Depo., p.1; Ex. A, Villar Depo., at 226:10-229:5). Cammarata expressed preferences for travel arrangements, providers, and reservations, and Plaintiff was expected to execute by setting up travel and meetings independently.  (*See* SSUMF ¶ 31; SSUMF Ex. A, Villar Depo., at 147:23-148:2).  Plaintiff was not subject to any formal employee handbook, policies, review process, disciplinary measures, or training in connection with his work for KMO. (*See* SSUMF ¶ 32; SSUMF Ex. A, Villar Depo., at 188:18-190:4; 190:7-14; Ex. I, Plaintiff Christopher Villar's Response To Defendants First Set Of Requests For Admissions, Request No. 21). Plaintiff was permitted to turn down work that he did not wish to do and he stated he was "an independent contractor, not an employee" when he objected to performing work being asked of him that he believed was more appropriate for an employee. (*See* SSUMF ¶ 33; SSUMF Ex. J, Exhibit 6 to Villar Depo.; Ex. A, Villar Depo., at 160:20-161:6; 162:3-7; 162:23-163:4). On approximately August 25, 2017, Plaintiff traveled to

and stayed at Cammarata's home in Florida at his own expense to visit with Cammarata socially and for work purposes. (*See* SSUMF ¶ 34; SSUMF Ex. F, Exhibit 10 to Villar Depo., p. 6-9; Ex. A, Villar Depo., at 198:3-22). During his working relationship with CMI and KMO, Plaintiff worked for other individuals and entities. (*See* SSUMF ¶ 35; SSUMF Ex. I, Plaintiff Christopher Villar's Response To Defendants First Set Of Requests For Admissions, Request No. 5). Plaintiff stopped working for KMO on or before September 27, 2017, Plaintiff did not notify Cammarata that he had quit, and Cammarata was informed by Plaintiff's friend Kyle Smithson that Plaintiff had quit working for KMO at some point. (*See* SSUMF ¶ 36; SSUMF Ex. F, Exhibit 10 to Villar Depo., p. 23).

Plaintiff is a co-owner of Virtual Mountain Capital ("VMC"). (*See* SSUMF ¶ 37; SSUMF Ex. A, Villar Depo., at 211:23-212:6).  In 2015, Plaintiff, through VMC, invested $140,000 in KMO's affiliated company Strategic Capital Partners Worldwide, LLC ("Strategic") pursuant to two terms sheets that provided for distributions to VMC from Strategic based on a formula that includes profits that KMO received from third-party Schmidt's. (*See* SSUMF ¶ 38; SSUMF Ex. E, Miegel Decl. ¶ 10).The more profits that KMO received from Schmidt's, the more VMC and Plaintiff profit. (*See* SSUMF ¶ 39; SSUMF Ex. A, Villar Depo., at 215:23-216:10; 218:6-24; 223:22-224:2).  Because Plaintiff's job duties included facilitating calls with investors and sending product samples of Schmidt's deodorant to potential investors or shops and boutiques that could increase its profits, the harder that Plaintiff worked, the more Plaintiff stood to profit through VMC. (*See* SSUMF ¶ 40; SSUMF Ex. A, Villar Depo., at 215:23-216:10; 218:6-24; 223:22-224:2).  Plaintiff's company VMC's $140,000 investment in KMO affiliated company Strategic is not guaranteed. (*See* SSUMF ¶ 41; SSUMF Ex. E, Miegel Decl. ¶ 11).

Plaintiff filed the instant FLSA action on December 4, 2019. (*See* SSUMF ¶ 46; ECF No. 1).  Plaintiff has produced no evidence that Defendants knew their classification of Plaintiff as an independent contractor was prohibited by the FLSA or showed reckless disregard about his classification, and confirmed as such in his deposition. (SSUMF Ex. A, Villar Depo., at 242:13-243:13).

 Defendants have faced no FLSA litigation other than the instant action. (*See* SSUMF ¶ 47; SSUMF Ex. E, Miegel Decl. ¶ 12).  Defendants have faced no Department of Labor investigation regarding Defendants' classification of workers. (*See* SSUMF ¶ 48; SSUMF Ex. E, Miegel Decl. ¶ 13).  No evidence exists of any other legal or financial basis to suggest that Defendants acted willfully or in reckless disregard of committing any FLSA violation. (*See* SSUMF ¶ 49; SSUMF Ex. E, Miegel Decl. ¶ 14).

## IV.    <u>SUMMARY JUDGMENT STANDARD</u>

Courts may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). The burden then shifts to the nonmoving party to show that a genuine issue of fact exists. The nonmoving party "may not rest upon mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An issue of fact is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. *Anderson*, 477 U.S. at 249.  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990).

## V.      PLAINTIFF WAS AN INDEPENDENT CONTRACTOR

Defendants are entitled to summary judgment because only "employees" are covered by the FLSA and Plaintiff was not an employee of Defendants.  An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is defined broadly as "to suffer or permit to work." 29 U.S.C. § 203(g).  Independent contractors, such as Plaintiff, are not protected by the FLSA. *See Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782, 782 (11th Cir. 2006). To decide whether an individual is an employee or an exempt independent contractor, the Eleventh Circuit looks to the "economic reality of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir.2013). To determine whether an individual is an employee under the FLSA, courts apply the six-factor economic realities test, which considers: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Id*. at 1312. Courts weigh all six factors and no one of the six factors can alone be determinative. *See Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308 (5th Cir. 1976); *See also Antenor v. D&S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). While these six factors serve as guidelines, the predominant focus of the inquiry is on economic dependence. *See, e.g., Quarles v. Hamler*, 652 Fed. Appx.

792 (11th Cir. 2016). Courts focus on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others" to determine economic dependence. *See*, *e.g., Scantland*, 721 F.3d at 1312.

### A.     Defendants Did Not Control Plaintiff

"Control arises when the purported employer goes beyond general instructions and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work." *Diego v. Victory Lab, Inc.*, 282 F. Supp. 3d 1275, 1281 (S.D. Fla. 2017); *see also Robles v. RFJD Holding Co.*, 2013 WL 2422625, at *4 (S.D. Fla. June 3, 2013) ("When an alleged employer provides specific direction for how workers, particularly lowskilled workers, are to perform their jobs, courts have weighed the control factor in favor of employee status.") (internal quotation marks and citations omitted). "The nature and degree of an alleged employer's control over work performance matters to the extent that 'it shows that an individual exerts such control over a meaningful part of the business that [they] stand as a separate economic entity.'" *Artola v. MRC Express, Inc.*, 2015 U.S. Dist. LEXIS 130183, *6 (S.D. Fla. 2015)(quoting *Usery*, 527 F.2d at 1312–13); see also *Dimingo v. Midnight Xpress, Inc.*, 325 F. Supp. 3d 1299, 1312 (S.D. Fla. 2018) (plaintiff was independent contractor where he was able to manage his time and work with little interference from the defendants).

Defendants did not control Plaintiff such that he should have been classified as an employee.  First, Plaintiff worked remotely during the entire relevant time period.  Plaintiff worked from his place of residence and did not go into Defendants' office.  (*See* SSUMF ¶ 22.) *See Murray v. Playmaker Servs., LLC*, 512 F. Supp. 2d 1273, 1278 (S.D. Fla. 2007) (finding plaintiff was an independent contractor where she conducted most of her business activities from her home and on her own time); *Zouai v. Evans,* 2015 WL 4768293, at *3 (S.D. Fla. Aug. 11,

11

2015) (denying an assistant's motion for summary judgment as to whether she was an employee or an independent contractor; finding that defendant maintained no time cards, plaintiff was able to come and go as she pleased, and plaintiff was able to work from home which tipped toward independent contractor).

Second, Plaintiff did not have a set schedule during which he was required to work – Plaintiff's schedule was so flexible and within his discretion that he is unable to state what hours he even worked during the day and Defendants did not maintain a record of his hours (s*ee* SSUMF ¶ 27.) *See Zouai,* 2015 WL 4768293, at *3 *Id.*; *see also*, *Murray*, 512 F. Supp. 2d at 1278 (plaintiff was independent contractor where plaintiff had no minimum or maximum number of hours or days per week that she was expected to work); *Yilmaz v. Mann,* 2014 WL 12539241, at *4-5 (S.D. Fla. July 10, 2014) (granting defendant's motion for summary judgment, finding that plaintiff was an independent contractor where plaintiff determined his own hours, defendant did not supervise or monitor his compliance, and defendant did not supervise how much plaintiff worked and neither kept track of plaintiff's hours).

Third, Cammarata provided very little direction and instructions as to how Plaintiff was to complete tasks assigned to him, expressing only preferences for travel arrangements, providers, and reservations (*see* SSUMF ¶¶ 30-31.).  *Yilmaz*, 2014 WL 12539241, at *5 (finding plaintiff was independent contractor where defendant provided little more than guidance and not detailed directives).

Fourth, because of Plaintiff and Cammarata's pre-existing friendship and KMO's small informal operations, they did not have what would be considered a typical employer/ employee relationship wherein Plaintiff was under Defendants' control.  (*See* SSUMF ¶ 3.) Plaintiff was not subject to any formal employee handbook, policies, review process, disciplinary measures, or

training.  (*See* SSUMF ¶ 32.) Plaintiff was also permitted to turn down work that he did not wish

to do because he stated he was an independent contractor and Plaintiff was able to and did in fact

object when he believed the work being asked of him crossed the line into being more employee-

like. (*See* SSUMF ¶ 33.) Plaintiff would also travel to and stay at Cammarata's home at his own

expense to spend time with Cammarata. (*See* SSUMF ¶ 34.) Thus, Plaintiff operated very

independently of control from Defendants, and this factor weighs in favor of an independent

contractor relationship.

### B.    Plaintiff Had Opportunity for Profit or Loss

This factor considers Plaintiff's opportunity for profit or loss dependent upon his

managerial skills, such as "initiative, judgment and foresight." *See Rutherford Food Corp. v.

McComb*, 331 U.S. 722, 730 (1947); *See also Scantland,* 721 F.3d at 1316. "An individual's

ability to earn more by being more technically proficient is unrelated to an individual's ability to

earn or lose profit via his managerial skill…" *Id.* at 1316.  Because Plaintiff stood to make a

profit or suffer a loss in connection with his work for KMO during the relevant time period,

Plaintiff was an independent contractor *(see* SSUMF ¶ 39-40; Villar Depo., at 215:23-216:10;

218:6-24; 223:22-224:2). *See Murray*, 512 F. Supp. 2d at 1278 (plaintiff was independent

contractor where her contract provided that she would receive percentage of net profit from any

completed sale).  Plaintiff, through his company VMC, invested $140,000 into KMO's affiliated

company Strategic as part of a profit participation agreement. (*See* SSUMF ¶¶ 38, 41.)  The more

profits that KMO received from Schmidt's, the more Plaintiff and his company VMC profited

financially. (*See* SSUMF ¶¶ 39-40.).  Similarly, if KMO did not receive profits from Schmidt's,

Plaintiff stood to lose his $140,000 investment. (*See* SSUMF ¶ 41.)  Plaintiff's job duties

included facilitating calls with investors in Schmidt's and sending product samples of Schmidt's

deodorant to potential investors or shops and boutiques, which could increase Schmidt's profits of which KMO would receive a portion. (*See* SSUMF ¶ 40.) Thus, the harder that Plaintiff worked, the more Plaintiff stood to profit through VMC.  Conversely, if Plaintiff did not assist with facilitating investor calls and meetings, or aid with communicating with potential distributors, KMO and, in turn, Plaintiff through his company VMC, were less likely to profit and, therefore, Plaintiff would suffer a loss on his investment.

The State Court Action is further evidence that Plaintiff was an independent contractor Plaintiff's first legal action after he stopped working for KMO was to file the State Court Action against KMO and Cammarata to recover on his investment, not file the instant FLSA action.  Thus, Plaintiff's legal actions show that he was not dependent on his weekly payment from KMO, but rather that he was dependent on the financial investments he made through his own enterprise, VMC.

Additionally, Plaintiff admitted that he worked on a number of production projects that he co-owned and co-created when he worked for CMI and KMO, from which he also stood to profit.  (*See* SSUMF ¶ 10.)  Specifically, the Indigo Project book is and was available for sale in paperback and hardcover and Plaintiff received a percentage of the book sales. (*See* SSUMF ¶¶ 11-13.)  One of Plaintiff's job duties for CMI was to liaison with the publisher of the Indigo Project book. (*See* SSUMF ¶ __.)  Thus, Plaintiff had a stake in a number of projects that he worked on as an independent contractor for Defendants and was not an employee.

C.   <u>**Plaintiff Invested in His Enterprise**</u>

Courts have found in favor of independent contractor status when plaintiffs invest in equipment or materials required for completing his tasks. *Scantland*, 721 F.3d at 1317.  In the instant case, Plaintiff was an independent contractor because he testified that he purchased the

14

laptop used to perform work during the relevant time period using his own debit card, registered the laptop to him on his own server and worked on the laptop at his residence. (*See* SSUMF ¶ 24-6.)  *See Zouai,* 2015 WL 4768293 at *3 (denying an assistant's motion for summary judgment as to whether she was an employee or an independent contractor where plaintiff used her own cell phone and laptop without reimbursement).  Plaintiff asserts without any evidence that a portion of the laptop cost was reimbursed but admits he believed the laptop was his property so he was not required to notify Defendants when he threw the laptop away.  (*See* SSUMF  ¶¶ 24-26.)  Because Plaintiff testified that a majority of his work was done through e-mail from his place of residence (*see* SSUMF ¶ 23), Plaintiff's laptop was his most significant tool used for work, and Plaintiff's investment in his server and place of residence were also integral to performing his job.  (*See* SSUMF ¶ 25.)  Further, Plaintiff testified that during his work for CMI, he continued to work on production projects that he co-owned and co-created such as the Indigo Project for CMI in which he had invested over $2,000, and from which he can personally profit.  (*See* SSUMF ¶ 14.)  Conversely, Plaintiff testified that Cammarata's contribution to this project was to provide some publicity for the project when publicizing other projects and that he did not financially invest in the project. (*See* SSUMF ¶ 15.)  In addition, Plaintiff's company VMC invested $140,000 in KMO's affiliated company Strategic. (*See* SSUMF ¶ 38.)  Thus, Plaintiff's investment in the projects he worked on while working for Defendants was greater than Defendants', again indicating that he was not employee.

      **D.**     **<u>Plaintiff Possessed Special Skills Necessary for the Job</u>**

     "[U]tilization of initiative and the employment of special skills indicates independent contractor status." *Artola*, 2015 WL 12672722, at *8. "A worker with unique skills and the opportunity to exercise initiative is more likely to be able to operate as an independent business

entity than an interchangeable worker who completes routine tasks." *Id.* "A lack of specialization

indicates that an individual is an employee, not an independent contractor." *Molina v. S. Fla.*

*Express Bankserv, Inc.,* 420 F. Supp. 2d 1276, 1286 (M.D. Fla. 2006).  Prior to working for

Defendants, Plaintiff attended film school to become a producer and had a career in the

entertainment industry, worked on at least three film projects, and had his own company called

Verbum Films.  Plaintiff assisted with producing films and raising funds for film projects.  (*See*

SSUMF ¶ 8.)  Plaintiff brought these skills to his work with CMI and KMO.  During the relevant

time period, Plaintiff assisted in setting up investor calls and meetings for KMO. (*See* SSUMF ¶

18.)  Plaintiff also assisted with tracking investors that were interested in KMO.  For this role

with KMO, Plaintiff required no formal training for his position. *See Zouai,* 2015 WL 4768293

at *3 (denying an assistant's motion for summary judgment as to whether she was an employee

or an independent contractor where defendant did not spend time training plaintiff for her

position suggesting economic independence and independent contractor status).  In other words,

Plaintiff's background in raising funds for films was applicable to raising funds for Schmidt's, a

natural product manufacturing company.

> ### E.    Plaintiff's Job Was Not Permanent or Exclusive

The degree of permanency and duration of the working relationship points in favor of

employee status when the tenure is long and exclusive. *Scantland*, 721 F.3d at 1318-1319.

Where a worker is able to obtain other job opportunities, it suggests that he is not economically

dependent and an employee.  *Dimingo*, 325 F. Supp. 3d at 1314 (granting defendant summary

judgment and finding employee was not an employee under economic reality test where plaintiff

was able to obtain other job opportunities during the relevant time period).  Plaintiff worked for

other entities during the relevant time period so his work was not exclusive. (*See* SSUMF ¶ 35.)

Plaintiff was also able to terminate his working relationship with CMI and KMO at any time. *Murray*, 512 F. Supp. 2d at 1279 (plaintiff was independent contractor because she was able to stop the relationship when she chose to do so, indicating there was no permanency to the relationship).  Plaintiff did not provide notice when he stopped working for Defendants, so it is unclear when Plaintiff stopped working for Defendants, showing there was no permanency to his work with Defendants.  (*See* SSUMF ¶ 36.)  Hence, Plaintiff was an independent contractor.

> **F.**    **Plaintiff Was Not Integral to Defendants' Business**

"If a worker's tasks are integral to the business of the employer, this suggests economic dependence." *Chavez v. Arancedo*, 2018 U.S. Dist. LEXIS 162898 (S.D. Fla. 2018) (*citing Scantland*, 721 F.3d at 1319).  Plaintiff's tasks, although helpful to Cammarata, were not integral to the business of the employer.  During the relevant time period, Plaintiff's job was primarily administrative in nature in that Plaintiff assisted with travel, scheduling, record keeping, and other "special projects."  (*See* SSUMF ¶¶ 16, 18.) Each of these functions could have been outsourced to a travel agent, a receptionist, or other administrative professional, meaning they were no integral to KMO's business.  *See Zouai*, 2015 WL 4768293, at *4 (denying an assistant's motion for summary judgment as to whether she was an employee or an independent contractor and determining plaintiff's administrative and clerical role was not integral to the business of film production).  There was nothing unique about the services provided by Plaintiff and Defendants could have contracted with other individuals to have these tasks performed. Thus, this factor too weighs in favor of a finding that Plaintiff was an independent contractor.

## VI.   PLAINTIFF'S CLAIMS ARE BARRED BECAUSE ANY VIOLATION WAS NOT WILLFUL

Defendants are also entitled to summary judgment because Plaintiff's claims are time barred.  Any action to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the FLSA must be commenced within two years after the cause of action accrued or be forever barred, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.  29 U.S.C.§ 255 (a).  Willful conduct as used in this context is "not merely negligent" conduct and instead requires that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Conduct that is only negligent, unreasonable, or based "on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects," but that is not reckless, does not constitute willful conduct under the FLSA.  *Id*. at 135, n. 13. It is the employee's burden to "prove by a preponderance of the evidence" that his employer acted willfully. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008); *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc*., 515 F.3d 1150, 1162–63 (11th Cir. 2008) (burden rests with the employee to "prove by a preponderance of the evidence" that her employer acted willfully).

Because Plaintiff commenced this action on December 4, 2019, with a 2-year statute of limitations barring any claims prior to December 5, 2017, all of Plaintiff's claims are time barred because he ceased being an independent contractor for KMO in October 2017.  Plaintiff can only reach back 10 months to December 5, 2016 if he shows that Defendants' conduct was willful. Even if Plaintiff was misclassified as an independent contractor, which he was not, Plaintiff has

failed to show by a preponderance of the evidence that Defendants willfully misclassified him. Plaintiff has presented no evidence that Defendants knew their classification of Plaintiff as an independent contractor was prohibited by the FLSA or showed reckless disregard about his classification, requiring judgment in Defendants' favor. See *Diaz v. Tropicare Serv., LLC,* 2015 WL 13777065, at *6 (S.D. Fla. May 19, 2015) (granting defendant's motion for summary judgment as to willfulness, finding that based on defendant's statement of material facts, there was no evidence of a willful violation of the FLSA, and plaintiff presented no evidence that defendant knew that its classification of plaintiff as an exempt employee was prohibited by the statute or that it showed reckless disregard about whether plaintiff was exempt from overtime.)

Evidence that a defendant is aware that "employees should be paid and should receive overtime for work in excess of 40 hours per week…is insufficient to find recklessness," especially when a defendant is "an unsophisticated 'mom' and pop' operation run on a 'seat of the pants' basis by lay persons unlearned in the law and regulations." *Schofield v. Suraj Properties, Inc.*, 2019 WL 1440125, at *1 (M.D. Fla. Apr. 1, 2019) (granting summary judgment to defendants on willfulness issue) (citing *McLaughlin*, 486 U.S. at 135). Defendants had no knowledge or reason to believe Plaintiff was not an independent contractor. Indeed, Plaintiff stated himself that he was an independent contractor, filed a 1099 each year with his tax return and never requested a W2 employee tax form from Defendants. Further, summary judgment is appropriate here because Plaintiff can point to no evidence that Defendants willfully misclassified him except his self-serving route testimony that defendant Cammarata allegedly wished to make him an employee. Here, during the relevant time period, KMO was not a large operation with a payroll, accounting, legal, or human resources department. (*See* SSUMF ¶ 21.) KMO consisted of Cammarata, his parents, and a bookkeeper sometimes. (*See* SSUMF ¶ 20.)

Additionally, Plaintiff testified that he had worked overtime in many other jobs and understood the obligation to pay overtime for employees before he began working for Defendants.  (*See* SSUMF ¶ 46.) Yet, Plaintiff continued to work for Defendants for over 6 years while allegedly being due overtime, and Plaintiff then waited over two years after he stopped working for Defendants to even file the instant suit.  Thus, there is no evidence that Defendants were aware that Plaintiff was working overtime or believed he was entitled to overtime until he filed this lawsuit 8 years after he first began working for CMI.  There is also no evidence of any other FLSA litigation against Defendants, any Department of Labor investigation regarding Defendants' classification of workers, or other legal or financial basis to suggest that Defendants acted willfully or in reckless disregard of committing any FLSA violation. (*See* SSUMF Ex. E, Miegel Decl.) ¶ 14; Joyner Decl. ¶ 6.)

Further, where there is a personal relationship between plaintiff and defendant, the business relationship is complicated and shows that any FLSA violation is not willful or done with reckless disregard.  *Crumpton v. Sunset Club Properties, L.L.C.*, 2011 WL 3269434, at *3 (M.D. Fla. Aug. 1, 2011) (finding FLSA infraction was not willful where plaintiff worker and defendant employer were in a romantic relationship which complicated the business relationship).  Here, Plaintiff and Cammarata were "best friends" throughout the working relationship and Cammarata was "helping his friend out"; therefore, blurring the line between work and personal interaction showing that any violation of the FLSA was not willful. (*See* SSUMF ¶¶ 3, 5.) Thus, Plaintiff's entire claim is time barred.

**VII.**   **CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that this Court enter an order grating summary judgment in its favor as to all claims against it.

Dated:  April 6, 2020                              Respectfully submitted,


                                   By:    */s/ Bridget Berry*
                                          Bridget Berry
                                          Florida Bar No. 515639
                                          berryb@gtlaw.com
                                          **GREENBERG TRAURIG, P.A.**
                                          777 South Flagler Drive - Suite 300 East
                                          West Palm Beach, Florida 33401
                                          Telephone:     (561) 650-7900
                                          Facsimile:     (561) 655-6222

                                          Attorneys for Defendants,
                                          Michael Cammarata, KM Organic Fund, Inc., and
                                          Cammarata Management, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this _____ day of April, 2020, I [E-FILE] electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send

a notice of electronic filing to all parties of record. [EMAIL] certify that a true and correct copy

of the foregoing was sent via electronic mail on this _____ day of _____, 2020 to:

Andrew R. Frisch, Esq., afrisch@forthepeople.com, Morgan & Morgan, 600 N. Pine Island

Road, Suite 400, Plantation, FL 33324; Tel (954)318-0268; Fax (954)333-3515.


*/s/ Bridget Berry*
Bridget Berry