UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NUMBER 19-CV-81625-DMM

CHRISTOPHER VILLAR,

    Plaintiff,

vs.

CAMMARATA MANAGEMENT, INC.,
a Delaware corporation,
KM ORGANIC FUND INC.,
a Florida profit corporation, and
MICHAEL CAMMARATA,

    Defendants.

**DEFENDANTS' CAMMARATA MANAGEMENT, INC., KM ORGANIC FUND INC. AND MICHAEL CAMMARATA'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Southern District of Florida Local Rule 56.1(a) Defendants Cammarata Management, Inc. ("CMI"), KM Organic Fund Inc. ("KMO") and Michael Cammarata (collectively "Defendants") hereby submit this Separate Statement of Undisputed Material Facts in support of their motion for summary judgment.

1. Defendant CMI is a management company having represented musicians, actors, and businesses. (*See* Defendants' Answer and Affirmative Defenses to Complaint (ECF No. 16, ¶ 14)). Defendant Michael Cammarata is a successful entrepreneur. (*See* Ex. A, Deposition Transcript of Christopher Villar ("Villar Depo.") at 126:4-10).

2. Defendant KMO is a company that has held a membership interest in a natural products company named Schmidt's Deodorant Company, LLC ("Schmidt's"). (*See* Defendants' Answer and Affirmative Defenses to Complaint (ECF No. 16, ¶ 14)).

3. Plaintiff first met Michael Cammarata ("Cammarata") in 2010 through a mutual friend, after which the two began spending time together and became "best friends." (*See* Ex. A, Villar Depo., at 99:20-100:2, 124:18-21).

4. In approximately November 2011, Plaintiff began working for CMI as Cammarata's executive assistant as an independent contractor. (*See* Ex. B, Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 127:1-3; 182:12-22).

5. Plaintiff believes Cammarata offered him a job to "help[] his friend out." (*See* Ex. A, Villar Depo., at 125:9-127:10).

6. Prior to working for CMI, Plaintiff attended film school and pursued a career as an actor and film producer. (*See* Ex. A, Villar Depo., at 57:8-19; Ex. B, Exhibit 5 to Villar Depo., p. 4-5).

1

7. Plaintiff's role was primarily to help people raise money and Plaintiff made a number of professional connections through his entertainment work. (*See* Ex. B, Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 58:4-16; 91:10-22).

8. Plaintiff had his own film company called Verbum Films (s*ee* Ex. A, Villar Depo., at 114:3-8) and Plaintiff worked on three projects as a producer: a project with David Raines and Gerald Molen which resulted in a lawsuit against David Raines in about 2004 (*see* Ex. A, Villar Depo., at 115:21-117:24), Suburban Jungle in about 2009 to 2010 (*see* Ex. A, Villar Depo., at 88:5-89:8), and the Indigo Project in about 2011 (*see* Ex. A, Villar Depo., at 90:4-16).

9. Plaintiff approached Cammarata about potential funding for his Suburban Jungle production project. (*See* Ex. A, Villar Depo., at 89:18-22).

10. Plaintiff co-owned and worked on the Indigo Project while he worked for CMI beginning in 2011, along with a number of entertainment related projects. (*See* Ex. A, Villar Depo., at 90:4-24; 97:16-98:22; 99:8-16).

11. The Indigo Project included publication of a book through the Independent Publishers Group that was and is available for sale in paperback and hard cover. (*See* Ex. A, Villar Depo., at 105:17-106:1).

12. Independent Publishers Group had a distribution deal with CMI wherein CMI and Plaintiff would receive a percentage of sales of the Indigo Project. (*See* Ex. A, Villar Depo., at 93:8-94:10).

13. Plaintiff received a check for about $50 to $100 in connection with sales of the book. (*See* Ex. A, Villar Depo., at 92:11-21; 107:6-20).

14. Plaintiff believes he potentially invested over $2,000 in the Indigo Project for advertising and artwork for the book and has yet to recover his investment. (*See* Ex. A, Villar Depo., at 94:16-19; 95:3-8; 92:11-21).

15. Cammarata did not financially invest in the Indigo Project but ran publicity for the book in about 2015 or 2016 in connection with an update on his other projects. (*See* Ex. A, Villar Depo., at 95:9-96:14).

16. Plaintiff's job duties with CMI included: liaising between Cammarata and clients regarding client accounts and new business; coordinating executive and senior management vacation, day-to-day meeting and travel schedules; scheduling and planning meetings and conferences; researching topics of interest and gathering information to produce reports; supervising executive and management calendars while allocating tasks to administrative support team; providing logistical support to visiting executives, coordinating with other executive assistants; and executing special objectives and projects in response to executive team and board member requests. (*See* Exhibit 5 to Villar Depo., p. 1 (Villar_00042); Ex. A, Villar Depo., at 148:12-149:16).

17. Plaintiff began working for KMO in approximately January 2015 and Cammarata's executive assistant and an independent contractor. (*See* Ex. B, Exhibit 5 to Villar Depo., p. 3-4 (Villar_00044-45); Ex. A, Villar Depo., at 188:5-14).

18. Plaintiff's job duties at KMO included: preparing and updating office records, spreadsheets and presentations to support executive needs; supervising executive and management calendars while allocating tasks to administrative support team; executing special objectives and projects in response to executive team and board member requests such as sending out holiday samples of Schmidt's deodorant to potential investors and distributors;

3

providing logistical support to visiting executives, coordinating with other executive assistants; keeping executives up to date on changing business information by documenting meetings, tracking documentation such as investors interested in KMO, and collecting team data; and scheduling conferences and associated travel arrangements. (*See* Ex. A, Villar Depo., at 220:20-221:11; Ex. B, Exhibit 5 to Villar Depo., p. 3-4 (Villar_00044-45); Ex. C, Exhibits 13-16 to Villar Depo.; Ex. D, Exhibit 21 to Villar Depo).

19. Plaintiff was paid $169 per week for work with KMO regardless of how many hours he worked. (*See* Ex. A, Villar Depo., at 212:24-213:15; 218:6-19).

20. During his employment with KMO and CMI, Plaintiff primarily interacted with Cammarata to whom he reported, his parents, and possibly a bookkeeper. (*See* Ex. A, Villar Depo., at 143:7-144:2).

21. During the relevant time period, KMO did not have a payroll, accounting, legal, or human resources department. (*See* Ex. E, Declaration of Scott Miegel In Support of Defendants' Cammarata Management, Inc., KM Organic Fund Inc. And Michael Cammarata's Motion for Summary Judgment ("Miegel Decl.") ¶ 2).

22. From December 4, 2016 to October 2017 ("the Relevant Time Period"), Plaintiff performed all of his work for KMO remotely from his home and did not work from KMO's office.[1] (*See* Ex. A, Villar Depo., at 234:21-235:4; Ex. E, Miegel Decl. ¶ 3).

23. Most of Plaintiff's work was done through e-mail. (*See* Ex. A, Villar Depo., at 237:9-16).

---

[1] The Relevant Time Period is from December 4, 2016 to October 2017 because this action was filed on December 4, 2019, the statute of limitations for an FLSA action is three years, and Plaintiff stopped working for KMO in October 2017.

24. In July 2013, Plaintiff purchased a laptop using his own debit card for use in his work for CMI and KMO for which he was only partially reimbursed. (*See* Ex. A, Villar Depo., at 234:21-235:4).

25. Plaintiff's laptop was registered to Plaintiff, Plaintiff used his own server for work on the laptop, and Plaintiff worked in his own residence when he performed work for CMI and KMO. (*See* Ex. A, Villar Depo., at 236:17-237:2).

26. Plaintiff threw away his laptop containing CMI and KMO confidential information sometime in 2017 and did not notify CMI or KMO he had done so until Cammarata inquired about the laptop in October 2017 when Plaintiff quit because Plaintiff believed it to be his laptop. (*See* Ex. A, Villar Depo., at 235:20-237:2; Ex. F, Exhibit 10 to Villar Depo., at p. 29).

27. Plaintiff and Defendants did not record Plaintiff's hours during the entire working relationship and Plaintiff did not have fixed working hours set by Defendants. (*See* Ex. A, Villar Depo., at 128:2-24; 178:7-179:4; Ex. E, Miegel Decl. ¶ 4).

28. Plaintiff does not know the exact hours he worked, approximates that he worked 60 hours per week based on his estimate that he worked 10 hours per day because he would wake up very early and not be done working until pretty late at night and on weekends, and claims he was available "24/7" to Cammarata. (*See* Ex. A, Villar Depo., at 127:16-22; 178:7-179:4; 182:8-11).

29. In August 2017, Plaintiff estimated in an email that he was spending only about 30 hours per week working for Schmidt's. (*See* Ex. G, Exhibit 23 to Villar Depo.; Ex. A, Villar Depo., at 209: 11-13).

30. Cammarata's instructions to Plaintiff for work were very general and not highly specific. (*See* Ex. H, Exhibit 14 to Villar Depo., p.1; Ex. A, Villar Depo., at 226:10-229:5).

31. Cammarata expressed preferences for travel arrangements, providers, and reservations and Plaintiff was expected to execute by setting up travel and meetings independently. (*See* Ex. A, Villar Depo., at 147:23-148:2).

32. Plaintiff was not subject to any formal employee handbook, policies, review process, disciplinary measures, or training in connection with his work for KMO. (*See* Ex. A, Villar Depo., at 188:18-190:4; 190:7-14; Ex. I, Plaintiff Christopher Villar's Response To Defendants First Set Of Requests For Admissions, Request No. 21).

33. Plaintiff was permitted to turn down work that he did not wish to do and he stated he was an "independent contractor, not an employee" when he objected to performing work being asked of him that he believed was more appropriate for an employee. (*See* Ex. J, Exhibit 6 to Villar Depo.; Ex. A, Villar Depo., at 160:20-161:6; 162:3-7; 162:23-163:4).

34. On approximately August 25, 2017, Plaintiff traveled to and stayed at Cammarata's home in Florida at his own expense to visit with Cammarata socially and for work purposes. (*See* Ex. F, Exhibit 10 to Villar Depo., p. 6-9; Ex. A, Villar Depo., at 198:3-22).

35. During his employment with CMI and KMO, Plaintiff worked for other individuals and entities. (*See* Ex. I, Plaintiff Christopher Villar's Response To Defendants First Set Of Requests For Admissions, Request No. 5).

36. Plaintiff stopped working for KMO on or before September 27, 2017, Plaintiff did not notify Cammarata that he had quit, and Cammarata was informed by Plaintiff's friend Kyle Smithson that Plaintiff had quit working for KMO at some point. (*See* Ex. F, Exhibit 10 to Villar Depo., p. 23).

37. Plaintiff is a co-owner of Virtual Mountain Capital ("VMC"). (*See* Ex. A, Villar Depo., at 211:23-212:6).

38. In 2015, Plaintiff, through VMC, invested $140,000 in KMO's affiliated company Strategic Capital Partners Worldwide, LLC ("Strategic") pursuant to two terms sheets that provided for distributions to VMC from Strategic based on a formula that includes profits that KMO received from third-party Schmidt's. (*See* Ex. E, Miegel Decl. ¶ 10).

39. The more profits that KMO received from Schmidt's, the more VMC and Plaintiff profit. (*See* Ex. A, Villar Depo., at 215:23-216:10; 218:6-24; 223:22-224:2).

40. Because Plaintiff's job duties included facilitating calls with investors and sending product samples of Schmidt's deodorant to potential investors or shops and boutiques that could increase its profits, the harder that Plaintiff worked, the more Plaintiff stood to profit through VMC. (*See* Ex. A, Villar Depo., at 215:23-216:10; 218:6-24; 223:22-224:2).

41. Plaintiff's company VMC's $140,000 investment in KMO affiliated company Strategic is not guaranteed. (*See* Ex. E, Miegel Decl. ¶ 11).

42. Plaintiff filed a state court action (the "State Court Action") on October 16, 2018 in the 15th Judicial Circuit Court of Palm Beach County, Florida, Case No. 502018CA013104 where Plaintiff's company Virtual Mountain Capital LLC ("VMC") alleges claims against, *inter alia*, Cammarata and KMO. (*See* Ex. K, State Court Action Complaint).

43. On September 27, 2019, KMO and CMI had added Plaintiff as a counter defendant by filing a Counterclaim against, *inter alia*, Plaintiff and VMC for breach of, among other things, Plaintiff's non-disclosure agreements that he had executed as an independent contractor for CMI and KMO. (*See* Ex. L, State Court Action Counterclaim).

44. On October 22, 2019, Plaintiff filed a motion to dismiss ("VMC and Villar's Motion to Dismiss") the Counterclaim in the State Court Action based, in part, on an assertion

that the Counterclaim should be brought in Federal court. (*See* Ex. M, State Court Action Motion to Dismiss; Ex. N, State Court Action Motion to Dismiss Hearing Transcript).

45. The State Court Action court declined, however, to interfere with the Federal action and granted in part and denied in part Villar's Motion to Dismiss. (*See* Ex. O, State Court Action Order on Motion to Dismiss).

46. Plaintiff filed the instant FLSA action on December 4, 2019. (ECF No. 1).

47. Defendants have faced no FLSA litigation other than the instant action. (*See* Ex. E, Miegel Decl. ¶ 12; Ex. P, Declaration of Jeffrey K. Joyner in Support of Defendants' Motion for Summary Judgment ("Joyner Decl.") ¶ 4).

48. Defendants have faced no Department of Labor investigation regarding Defendants' classification of workers. (*See* Ex. E, Miegel Decl. ¶ 13); Ex. P, Joyner Decl. ¶ 5).

49. No evidence exists of any other legal or financial basis to suggest that Defendants acted willfully or in reckless disregard of committing any FLSA violation. (*See* Ex. E, Miegel Decl. ¶ 14; Ex. P, Joyner Decl. ¶ 6).

50. Prior to and after working for CMI, Plaintiff also worked a number of jobs that paid him overtime for work over 40 hours a week, such that Plaintiff understood that employees are entitled to overtime pay when they work over 40 hours per week during the time he worked for CMI and KMO. (*See* Ex. A, Villar Depo., at 75:17-20; 81:22-82:8).

Dated: April 6, 2020                    Respectfully submitted,

By:   */s/ Bridget Berry*
Bridget Berry
Florida Bar No. 515639
berryb@gtlaw.com
GREENBERG TRAURIG, P.A.

8

777 South Flagler Drive - Suite 300 East
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
Attorneys for Defendants,
Michael Cammarata, KM Organic Fund, Inc., and
Cammarata Management, Inc.

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April, 2020, I [E-FILE] electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all parties of record. [EMAIL] certify that a true and correct copy of the foregoing was sent via electronic mail on this 6th day of APril, 2020 to: Andrew R. Frisch, Esq., afrisch@forthepeople.com, Morgan & Morgan, 600 N. Pine Island Road, Suite 400, Plantation, FL 33324; Tel (954)318-0268; Fax (954)333-3515.

*/s/ Bridget Berry*
Bridget Berry